U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS 2   2 51 PM '98

FILED IN CLERKS
OFFICE
CENTRAL SECTION
CIVIL ACTION
NO.

# 98-40098 

|  |  |
|---|---|
| CHARLES E. SAMPLES and CAROLE SAMPLES, | ) ) ) ) |
| Plaintiffs | ) ) ) |
| v. | ) ) |
| JAMES A. AYOTTE, Individually and in his Official Capacity as a Police Officer for the Town of Spencer Police Department | ) ) ) ) |
| RICHARD A. LAPIERRE, Individually and in his Official Capacity as a Police Officer for the Town of Spencer Police Department, | ) ) ) ) ) |
| VINCENT PUCHALSKI, Individually and in his Official Capacity as a Police Officer for the Town of Spencer Police Department, | ) ) ) ) ) |
| LOUIS A. MARTIN, In his Official Capacity as Chief of Police for the Town of Spencer Police Department, | ) ) ) ) |
| THE TOWN OF SPENCER, a Municipal Corporation duly established under the laws of the Commonwealth of Massachusetts, | ) ) ) ) ) |
| Defendants | ) ) |

***COMPLAINT***

***AND***

***DEMAND FOR***

***A***

***JURY TRIAL***

RECEIPT #  402404
AMOUNT $  150.
SUMMONS ISS. ✓
LOCAL RULE 4.1 ✓
WAIVER OF SERV. ✓
MCF ISSUED  ✓
AO 120 OR 121 ✓
BY DPTY CLK  AP
DATE  6/2/98



FILING FEE PAID:
RECEIPT #
AMOUNT $
BY DPTY CLK
DATE

## I.    *JURISDICTION*

1.      This is an action under the Federal Civil Rights Act, 42 U.S.C. Sections 1983 and 1988.  The Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343.  The plaintiff further invokes the pendent jurisdiction of this Court to consider the claims arising under state law sounding in tort, the Massachusetts Tort Claim Act, M.G.L. Chapter 258, Section 4, and the Declaration of Rights of the Massachusetts Constitution.

2.      There exists between the parties an actual controversy justiciable in nature.

## II.    *PARTIES*

3.      The plaintiff, CHARLES E. SAMPLES, has at all times relevant to the allegations of this Complaint been a resident of the Town of Spencer, Worcester County, in the Commonwealth of Massachusetts.

4.      The plaintiff, CAROLE SAMPLES, has at all times relevant to the allegations of this Complaint been a resident of the Town of Spencer, Worcester County, in the Commonwealth of Massachusetts.

5.      The defendant, JAMES A. AYOTTE, has at all times relevant to the allegations of this Complaint been a police officer, acting under color of law as an agent/employee for the Town of Spencer Police Department, Worcester County, in the Commonwealth of Massachusetts.

6.      The defendant, RICHARD A. LAPIERRE, has at all times relevant to the allegations of this Complaint been a police officer, acting under color of law as an agent/employee for the Town of Spencer Police Department, Worcester County, in the

2

Commonwealth of Massachusetts.

7.     The defendant, VINCENT PUCHALSKI, has at all times relevant to the allegations of this Complaint been a Police Lieutenant, acting under color of law as an agent/employee for the Town of Spencer Police Department, Worcester County, in the Commonwealth of Massachusetts.

8.     The defendant, LOUIS A. MARTIN, has at all times relevant to the allegations of this Complaint been the Chief of Police, acting under color of law as an agent/employee for the Town of Spencer Police Department, Worcester County, in the Commonwealth of Massachusetts.  In his capacity as Chief of Police, LOUIS A. MARTIN, was the principal law enforcement administrator for the Town of Spencer, and, as such, was at all times relevant to the allegations of this Complaint, responsible for the practices, customs and policies of the Town of Spencer Police Department and all of its individual members, including adequate training, supervising, investigating, and disciplining of police officers and other police supervisory officials.

9.     The defendant, TOWN OF SPENCER, has at all times relevant to the allegations of this Complaint been a Municipal Corporation duly established under the laws of the Commonwealth of Massachusetts.  The Town of Spencer, through its officers, employees and/or agents, was at all times responsible for the practices, customs and policies of the Town of Spencer Police Department and all of its individual members including adequate training, supervising, investigating and disciplining of the chief of police, police supervisory officials and police officers.

3

### III.   *STATEMENT OF FACTS*

10.    On November 21, 1996, plaintiff Charles E. Samples, who was 56 years old at the time, received a notice from the Webster Police Department that his son had to appear in court and that plaintiff's vehicle may be impounded as a result.

11.    Confused by the notice, plaintiff Samples telephoned his local Police Department in Spencer to inquire generally about automobile impoundment procedures.

12.    During the conversation, the Spencer Police Officer who answered the call, requested that plaintiff Samples come down to the Spencer Police Station so that they could speak in person.

13.    After telling his wife, plaintiff Carole Samples, that he would be back shortly for dinner, the plaintiff drove to the Spencer Police Station.

14.    Once inside the station, the plaintiff was greeted by defendant Spencer Police Officer James A. Ayotte.  Plaintiff Charles E. Samples introduced himself, told defendant Ayotte that he was a resident of Spencer, and that he would like to ask a question.  In response, defendant Ayotte requested that the plaintiff produce identification.  At this, the plaintiff chuckled and stated "Do I need an I.D. to ask a question?".   Defendant Ayotte replied, "Do you have an I.D.?".   Plaintiff Samples replied "Yes", and produced his driver's license.

15.    After looking at the plaintiff's license, defendant Ayotte told the plaintiff that he was under arrest.

16.    Plaintiff Samples thought defendant Ayotte was joking and laughed, and then stated, "for asking a question, you are going to arrest me?".

4

17.    In response, defendant Ayotte stated that the plaintiff was under arrest for leaving the scene of an accident in Worcester in 1995.

18.    In response, the plaintiff explained several times that he had never had an accident in Worcester, and that it was his 35 year old son, Charles M. Samples, who had been involved in that accident.

19.    Notwithstanding, defendant Ayotte placed the plaintiff under arrest and then grabbed him by the wrist.

20.    Plaintiff Samples was led into another room where he was asked to empty his pockets, and take off his jacket and shoes.

21.    After defendant Ayotte placed all of the plaintiff's personal belongings in a basket, the plaintiff asked if he could have his Nitroglycerine pills back since he was not feeling good, was beginning to experience chest pain, and his heart was beginning to squeeze up. In response, defendant Ayotte replied that he could not have his Nitroglycerine pills. At this, the plaintiff became extremely emotionally upset.

22.    Defendant Ayotte then informed the plaintiff that everything he said and did was being videotaped.

23.    After hearing this, the plaintiff looked up at the videotape and stated, "I'm telling you people that are watching this tape, that he's got the wrong man".

24.    Once again the plaintiff told defendant Ayotte that he did not feel good and wanted his Nitroglycerine. This request was again denied.

25.    Defendant Spencer Police Officer Richard A. LaPierre then entered the room.

26.    The two defendant officers then pushed the plaintiff up against the wall, and

5

forcibly twisted his head and neck.  The plaintiff cried out in pain because the twisting action was causing severe pain, and re-injuring a serious neck and shoulder injury from which he was recovering.

27.     Defendant Lieutenant Vincent Puchalski then entered the room and asked what was going on.

28.     In response, the plaintiff told defendant Puchalski that the defendant officers had arrested the wrong man.  He further explained that he had kept a ledger for each year which tracked his whereabouts each hour of each day, and that his ledger would evidence that he was nowhere near Worcester on the day the defendant officers were claiming he had been in the accident.

29.     In addition, the plaintiff told defendant Puchalski that he did not feel well and that he needed his Nitroglycerine.

30.     In response, defendant Ayotte stated, "He can't have his pills".

31.     Defendant Puchalski then stated to the two defendant officers, "I think you've got the wrong man, guilty people don't act this way".

32.     Defendant Ayotte replied, "Well he can't have his pills, he's under arrest".

33.     The plaintiff then picked up the telephone and called his wife, plaintiff Carole Samples, to inform her that he had been arrested.

34.     While on the telephone, the plaintiff began to experience severe chest pains and collapsed.

35.     The defendant officers rushed over, moved him to a chair and placed a Nitroglycerine tablet in his mouth.

6

36.    During this period of time, the plaintiff was experiencing excruciating chest pains, was sweating, had difficulty breathing, was dizzy and could not see clearly.

37.    As a result, the defendant officers administered oxygen and called an ambulance.

38.    Shortly thereafter, the EMT attendants arrived and placed the plaintiff onto a stretcher.

39.    At this point in time, defendant Ayotte proceeded to shackle the plaintiff's ankles together and handcuffed his wrists to the stretcher.

40.    While in the ambulance, the EMT unsuccessfully attempted to insert an intravenous needle into the plaintiff's arm, but his veins only collapsed. As a result, a call was made to another ambulance with a Paramedic, which met up with the first ambulance en-route to the hospital. Once in the ambulance, the Paramedic was able to insert an intravenous needle into the plaintiff's arm, and then sprayed liquid Nitroglycerin into his mouth.

41.    In an attempt to calm the plaintiff, the Paramedic spoke quietly to him.

42.    At this, defendant Ayotte, who was also present in the ambulance, ordered the plaintiff not to speak with the Paramedic since he was under arrest.

43.    In response, the plaintiff told defendant Ayotte that he "would speak with the Paramedic, because they had arrested the wrong man".

44.    The plaintiff (*who thought he was going to die*), then turned to the Paramedic and uttered, "remember me, because they arrested the wrong man".

45.    The Paramedic calmly told the plaintiff to relax because he was not doing too well, and that they would be at the hospital in just a few minutes.

7

46.     Several minutes later, the plaintiff was brought into the Emergency Room, still handcuffed and shackled. He was moved into a bed, shackled at the ankles and was then handcuffed to the hospital bed.

47.     As a cardiologist was checking the plaintiff, nearby nurses looked on in fear. At this, the plaintiff asked the cardiologist to tell the nurses that he would not hurt them, and that he had never done anything wrong in his life. The cardiologist then administered another spray of liquid Nitroglycerin and a sedative.

48.     During this period of time, the plaintiff was in a state of shock and had extreme difficulty calming down, as the nurses and others present in the vicinity at the hospital continued to look at him in fear. He again explained to the cardiologist that the defendant police officers had arrested the wrong man, and that he would not hurt anybody.

49.     Within several minutes, the cardiologist advised the plaintiff that he was not responding well to the medication, and that he wanted to take an x-ray of the plaintiff's heart.

50.     As a result, the defendant officers removed the handcuffs from the hospital bed and handcuffed the plaintiff's wrists together in front. Then the defendant officers stood the plaintiff up and escorted him to the Radiology Department.

51.     As the plaintiff was escorted down the corridor, physicians, nurses, hospital workers, patients and others stopped and stared. In an overwhelming state of embarrassment and anxiety, the plaintiff told people that he encountered that he would not hurt them, and that the police had arrested the wrong man.

52.     While in the Radiology Department, a nurse called over to defendant officers Ayotte and LaPierre, and told them that a Sergeant from the Spencer Police Department was

8

on the telephone. Defendant Ayotte told the nurse that he would call the Sergeant back later. In response, the nurse stated, "I think you had better take this call, Mrs. Samples is down at the police station".

53.    While defendant Ayotte was on the telephone, the plaintiff was escorted back to the hospital bed by defendant LaPierre, the cardiologist, and nurses. Once in bed, the plaintiff was handcuffed once again to the bed.

54.    At this point in time, the plaintiff again told the cardiologist that he had not done anything wrong and that the police had arrested the wrong man.

55.    During this period of time, plaintiff Carole Samples was at the Spencer Police Station and was meeting with Spencer Police Sergeant William Lebeau. During their conversation, plaintiff Carole Samples advised Sergeant Lebeau that the Spencer Police Department had arrested the wrong man, and explained that her son had been in the accident in Worcester, and that she had previously gone to the Department of Motor Vehicles with her son and had straightened the matter out.

56.    While in the presence of plaintiff Carole Samples, Sergeant Lebeau telephoned the hospital to inquire about her husband. During the telephone call, plaintiff Carole Samples overheard Sergeant Lebeau tell defendant Ayotte, "You've got the wrong man".

57.    Later after a second telephone call to the hospital, Sergeant Lebeau informed plaintiff Carole Samples that her husband was doing better and that he would be returned to the police station, but that he would have to stay there.

58.    Prior to leaving the Spencer Police Station, plaintiff Carole Samples reiterated once again that the Spencer Police Department had arrested the wrong man.

9

59.     In response, Sergeant Lebeau told plaintiff Carole Samples that this "group of police officers did not go to the Academy, that they were just hired off the street, and that they do not do what they are told.  They (the officers) do what they want to do".

60.     In response, plaintiff Carole Samples asked, "How can they override your authority?".   Sergeant Lebeau replied, "They do it all the time".

61.     When defendant Ayotte returned back to the plaintiff's hospital room from his telephone call with Sergeant LeBeau, he had a sheepish look on his face, and went over to defendant LaPierre and began whispering in his ear.

62.     At this point in time, the two defendant officers' disposition toward the plaintiff completely changed.  It was evident to the plaintiff that the defendant officers knew and had been told by Sergeant LeBeau that they had arrested the wrong man.

63.     Defendant LaPierre then came over to the plaintiff and adjusted his handcuffs so that his arm was no longer dangling in mid air causing on-going pain in his wrist.

64.     In addition, defendant Ayotte covered the plaintiff's ankles with a blanket so that the shackles were no longer visible.

65.     Further, at this point in time the two defendant officers engaged the plaintiff for the first time that evening, in general conversation.

66.     After further medical care and treatment, the plaintiff was advised by the cardiologist in the early morning that he had the option of staying the night or leaving with the police.  Plaintiff Samples replied, "Well, I'll go with the police. They know they have the wrong man, and they'll let me go home".

67.     After signing a release and receiving instructions by the cardiologist to take his

10

heart pill in the morning and to keep his Nitroglycerin with him at all times, the plaintiff was released.

68.     The defendant officers then came over removed the handcuffs from the hospital bed and  handcuffed the plaintiff in front.

69.     The defendant officers then escorted the plaintiff out of the hospital and across the parking lot.  Throughout this period of time, the plaintiff had no shoes or coat, and was dressed only in a light shirt and pants.  The weather outside was well below zero with the wind chill factor.

70.     The plaintiff, who was freezing, was placed in the back seat of the cruiser which was unheated.

71.     On the way back to the station, the two defendant officers stopped at Burger King to eat.  All the while, the plaintiff remained miserably cold and freezing in the back seat of the cruiser.

72.     When they finally arrived back at the Spencer Police Station, the plaintiff was escorted back to the room where he had been originally booked.  The shackles and handcuffs were finally removed, and the plaintiff reached for his shoes because his feet were freezing.

73.     At this, one of the defendant officers stated, "What are you doing?".  Plaintiff Samples replied, "I'm going to put on my shoes. I'm going home".  The defendant officer stated, "You're not going home, you're going in that cell".

74.     Plaintiff Samples then looked up at the videotape and stated, "You mean to tell me, even though you know you have the wrong man, you're going to put me in that cell".  The defendant officer laughed and stated, "That's right!".  Then both defendant officers

11

Ayotte and LaPierre laughed.

75.    Plaintiff Samples was then placed in a cold cell, without his Nitroglycerine, and with nothing to lay or sit on except a cold cement slab.  The cement slab continued to draw the warmth from his freezing cold body, and as a result, the plaintiff sat up the remainder of the night in a state of utter shock and despair.

76.    The following morning defendant Puchalski entered the cell, gave the plaintiff his shoes and jacket, shackled his ankles and handcuffed him behind his back.

77.    At this, the plaintiff stated once again that they had arrested the wrong man, complained that his arm and shoulder were hurt and aching, and further requested that he be handcuffed in front rather than in back because of his heart condition.  Defendant Puchalski ignored the plaintiff's request.

78.    After the plaintiff was brought back into the booking room, he once again looked up at the video camera and stated to defendant Puchalski, that they had arrested the wrong man.

79.    In addition, the plaintiff told defendant Puchalski that he had warned the defendant officers that if they put him in a jail cell that he was going to sue them.  In response, defendant Puchalski stated, "Well if you want to sue anybody, then sue your son".  Plaintiff Samples stated in response that his son had nothing to do with the arrest.

80.    The plaintiff was then placed in the back seat of the cruiser and transported to the East Brookfield Courthouse.  Once inside the courthouse, the plaintiff was escorted downstairs and placed in a room with a number of other criminal defendants.

81.    Upon seeing the plaintiff, the Court Officer stated to the plaintiff, "I think I

12

know you". In response, the plaintiff stated, "I think I know you too". The Court Officer then asked the plaintiff what was the problem. In turn, the plaintiff advised the Court Officer that the Spencer Police had arrested the wrong man. The Court Officer looked at defendant Puchalski, who in turn admitted, "Yes, we arrested the wrong man. We wanted his son". The Court Officer then stated to defendant Puchalski, "You bring him in here like this and you know you have the wrong man?". Defendant Puchalski then laughed, "Yeah, ha, ha, ha", and turned around and walked away.

82.    After a period of time, the plaintiff was escorted into a room in order to meet with a public defender. During the period of time that the plaintiff was meeting with the public defender, the Court Officer informed the public defender that defendant Puchalski had told him that the Spencer Police Department had arrested the wrong person. The public defender looked at the plaintiff and asked, "Are you going to go for monetary damages?".

83.    After waiting approximately one to two more hours, the plaintiff was escorted into the courtroom, shackled and handcuffed. Once in the courtroom, the Judge was handed a piece of paper which stated that the Spencer Police Department had arrested the wrong man. The Judge looked at the District Attorney and asked, "You mean to tell me that they know they arrested the wrong man and they bring him into the courthouse like this?". The District Attorney just raised his hands and stated that he did not know anything about it. The Judge then asked the plaintiff about the intravenous patches on his hands. The plaintiff in turn explained that he had a heart attack during the arrest the previous night.

84.    The Judge then informed the plaintiff that he was scheduled for a court date on Monday morning, and instructed him to, "Get a good lawyer". The Judge then instructed the

13

Court Officer to remove the shackles and handcuffs, and told the plaintiff to go to the Clerk's Office.

85.   After leaving the courtroom, the plaintiff went to the Clerk's Office and signed a release. The *typewritten* form that he signed, contained his son's name, his son's driver's license, and his son's date of birth. The *typewritten* license number and date of birth were scribbled out, and were *handwritten* in with the plaintiff's license and date of birth.

86.   Notwithstanding the fact that the defendant police officers admitted that they had arrested the wrong man, they continued to prosecute the plaintiff.

87.   After four additional court appearances, the plaintiff was found Not Guilty on February 18, 1997, for the stated reason that the Spencer Police Department had arrested the wrong man.

88.   During one of the court appearances, the Judge ordered the Spencer Police Department to retain the videotapes which were taken at the Spencer Police Station and which involved the plaintiff.

89.   As a result of the illegal arrest and imprisonment, and subsequent on-going malicious prosecution, plaintiff Charles E. Samples suffered severe and extreme emotional distress and mental anguish, public humiliation and embarrassment, serious physical injuries, pain and suffering, loss of enjoyment of life, and incurred substantial medical bills and other related expenses and damages. In addition, he suffered sleep disturbances following this incident and throughout the prosecution of the criminal charge against him, and suffered for the first time in his life, job related performance problems because of the on-going anxiety, mental anguish and emotional distress.

14

90.     In addition, as a result of the incident and damages sustained by her husband, plaintiff Carole Samples' marital life with her husband suffered significantly.

91.     On information and belief, the defendant police officers attended the police academy and received initial training in the laws of arrest and detention, the laws of criminal prosecution, and constitutional rights of citizen.  They knew or should have known that they violated the Fourth and Fourteenth Amendments, and otherwise denied the constitutional and statutory rights of the plaintiff.

92.     On information and belief, on occasions prior to the incident alleged in the preceding paragraphs, defendants Chief of Police Louis A. Martin and the Town of Spencer through its officers and/or agents, knew or should have known that Spencer Police Officers illegally arrested and imprisoned, engaged in malicious prosecutions, engaged in cover-ups, verbally abused and harassed, and otherwise denied the statutory and constitutional rights of citizens.

93.     On information and belief, defendants Chief of Police Louis A. Martin and the Town of Spencer through its officers and/or agents, failed to adequately train, investigate, supervise, and discipline the police officers employed by the Town of Spencer Police Department.

94.     On information and belief, defendants Chief of Police Louis A. Martin and the Town of Spencer through its officers and/or agents, failed to adequately train the police officers employed by the Spencer Police Department subsequent to initial police academy training regarding the laws of arrest, the laws of the use of force, the laws of search and seizure, the laws pertaining to probable cause to arrest and prosecute, constitutional rights of

15

citizens and civil liability of police officers.

95.     The acts of the defendant police officers, defendant Chief of Police Louis A.
Martin and other policy makers of the Town of Spencer are grossly negligent amounting to
deliberate indifference to the rights of citizens who the police come into contact with, or
negligent at the very least.

96.     On or about November 6, 1997, plaintiffs through Counsel sent a
Notice/Demand letter pursuant to M.G.L. Chapter 258 to the appropriate Town of Spencer
officials.  More than six months has passed since the receipt of this notice.  The appropriate
Town of Spencer officials have failed to reply to said Notice/Demand.


## IV.    *CAUSES OF ACTION*

### COUNT I:   ILLEGAL ARREST AND UNLAWFUL IMPRISONMENT

97.     The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1
through 96 of this Complaint as though fully set forth herein.

98.     As a direct and proximate result of the malicious, wanton and wilful acts of the
defendant police officers acting under color of law, plaintiff Charles E. Samples was
intentionally and unlawfully arrested and confined without his consent and without probable
cause, and thereby was deprived of rights guaranteed by the Fourth and Fourteenth
Amendments to the United States Constitution and the Declaration of Rights of the
Massachusetts Constitution.  The plaintiff was also damaged in his reputation, embarrassed,
prevented from engaging in his usual activities, and caused to endure pain, suffering and
mental anguish.

16

99.     The plaintiff is thereby entitled to damages under the Fourth and Fourteenth

Amendments to the United States Constitution, 42 U.S.C. Sections 1983 and 1988, the

Declaration of Rights of the Massachusetts Constitution, M.G.L. Chapter 12, Section 11I, and

under Massachusetts common law for false arrest and false imprisonment.


### *COUNT II: EXCESSIVE FORCE, HARASSMENT AND INTIMIDATION*

100.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1

through 99 of this Complaint as though fully set forth herein.

101.    As a direct and proximate result of the reckless, grossly negligent, malicious,

wanton and/or willful acts of the defendant police officers, acting under color of law, the

defendants by their use of excessive, illegal and unjustified force in making an arrest, deprived

plaintiff Charles E. Samples of his rights, privileges and immunities as guaranteed by the

United States Constitution, as follows:

        a.     the plaintiff was deprived of his rights to be free of physical abuse,

             coercion and intimidation in violation of the First, Fourth and

             Fourteenth Amendments to the United States Constitution;

        b.     the plaintiff was deprived of his rights to be free from summary

             punishment as guaranteed by the Fourth, Fifth and Fourteenth

             Amendments to the United States Constitution; and

        c.     the plaintiff was deprived of his rights to due process of law, in violation

             of the Fifth and Fourteenth Amendments to the United States

             Constitution.

17

102.    The plaintiff is thereby entitled to damages under the United States Constitution,

42 U.S.C. Sections 1983 and 1988, the Declaration of Rights of the Massachusetts

Constitution, and M.G.L. Chapter 12, Section 11I.

### COUNT III: ASSAULT AND BATTERY

103.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1

through 102 of this Complaint as though fully set forth herein.

104.    The defendant police officers did unlawfully commit an assault and battery

against the plaintiff Charles E. Samples in violation of Massachusetts common law.

### COUNT IV:  MALICIOUS PROSECUTION

105.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1

through 104 of this Complaint as though fully set forth herein.

106.    By arresting the plaintiff and initiating criminal proceedings against him with

malice and without probable cause to do so, and with the plaintiff receiving a favorable

determination of the criminal complaint against him, the defendants have engaged in the

malicious prosecution of the plaintiff in violation of the First and Fourth Amendment to the

United States Constitution and the due process and equal protection clauses of the Fifth and

Fourteenth Amendments of the United States Constitution and Part I of the Massachusetts

Constitution.

107.    The plaintiff is thereby entitled to damages and equitable relief under the First,

Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C.

18

Sections 1983 and 1988, the Declaration of Rights of the Massachusetts Constitution, M.G.L. Chapter 12, Section 11I, and other state common laws against malicious prosecution.

### COUNT V:  CONSPIRACY TO VIOLATE CIVIL RIGHTS

108.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109.    As a direct and proximate result of the malicious, wanton and willful acts of defendants Ayotte, LaPierre and Puchalski, who separately, in concert and in agreement with each other, conspired to deprive the plaintiff of his federal and state civil rights, as follows:

   a.    by conspiring to violate the plaintiff's Fourth Amendment Rights, and rights secured to the plaintiff by Articles I and XIV of the Declaration of Rights of the Massachusetts Constitution;

   b.    by conspiring to engage in the cover up of the illegal arrest and imprisonment;

   c.    by conspiring to engage in the continued prosecution of the plaintiff, and otherwise abusing process.

110.    The plaintiff is thereby entitled to damages and relief pursuant to 42 U.S.C. Sections 1983 and 1988.

19

### COUNT VI:  ABUSE OF PROCESS

111.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 110 of this Complaint as though fully set forth herein.

112.    As a direct and proximate result of the deliberate and intentional acts of defendants Ayotte, LaPierre and Puchalski, acting under color of law, the plaintiff was damaged by the defendants when they acted with malice and without legal justification, and otherwise used the lawful authority vested in them as police officers to accomplish an unlawful purpose to wit: the initiation and continuation of criminal proceedings against the plaintiff with the intention of securing his conviction for any, or all of the following unlawful purposes:  (1) to cover up the illegal arrest and imprisonment; (2) to protect themselves from civil and criminal liability; and (3) to frustrate the plaintiff from pursuing the legal remedies available to him as guaranteed by the United States and Massachusetts Constitutions, and federal and state law.

113.    The plaintiff is thereby entitled to damages under state common laws against abuse of process.

### COUNT VII:    RECKLESS AND/OR INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS

114.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115.    As a direct and proximate result of the acts of defendants Ayotte, LaPierre and Puchalski, the plaintiffs did suffer severe emotional distress, pain and suffering, mental

20

anguish, humiliation and embarrassment of such severity and nature that no reasonable person could or should be expected to endure, and the defendants knew or should have known that their acts would cause such emotional distress, pain and suffering, mental anguish, humiliation and embarrassment. Further, said emotional distress, pain and suffering, mental anguish, humiliation and embarrassment was recklessly and/or intentionally inflicted.

### *COUNT VIII: LOSS OF CONSORTIUM*

116.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 115 of this Complaint as though fully set forth herein.

117.    As a direct and proximate result of the acts and practices of defendants, plaintiff Carole Samples was unable to enjoy the society, assistance, companionship, comfort and conjugal affection of her husband, Charles Samples, until a substantial period of time after the incident.

### *COUNT IX: UNCONSTITUTIONAL POLICY OR CUSTOM/GROSS NEGLIGENCE*

118.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 117 of this Complaint as though fully set forth herein.

119.    Defendant Chief of Police Louis A. Martin and the defendant Town of Spencer, through its officers and/or agents, and pursuant to an unconstitutional custom or policy, have failed to adequately train, supervise, investigate, control and discipline Spencer Police Officers. This deliberate indifference has been grossly negligent amounting to deliberate indifference to the rights of citizens.

21

120.    With the knowledge of and under the direction of defendant Chief of Police

Louis A. Martin and the defendant Town of Spencer, the Spencer Police Department and its

individual members, acting under color of law, have engaged in a pattern of conduct which

was the moving force that caused the violations of the plaintiffs' constitutional and statutory

rights. Defendant Louis A. Martin and the defendant Town of Spencer, pursuant to an

unconstitutional custom or policy, have failed to adequately hire, train, supervise, control,

investigate and discipline the defendant police officers who have denied plaintiff Charles E.

Samples his rights as guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the

United States Constitution, as well as, the Massachusetts Constitution.

121.    Defendant Chief of Police Louis A. Martin and the defendant Town of Spencer

have been grossly negligent and deliberately indifferent in the training of police officers. The

municipal policy makers have failed to provide minimally acceptable standards of training or

instruction to police officers in contemporary and up-to-date law enforcement standards,

policies and procedures, in a number of key areas of law governing the laws of arrest, the laws

governing probable cause to arrest and prosecute, the laws of search and seizure, the laws of

the use of force, constitutional rights of citizens, and civil liability of police officers.

122.    The official policy, custom and/or usage of the defendant Town of Spencer,

through its officers and/or agents, is unconstitutional insofar as it dictates, encourages and/or

permits police officers of the Spencer Police Department to violate the rights of citizens.

123.    The official policy, custom and/or usage of the defendant Town of Spencer,

through its officers and/or agents, violates the Constitution of the United States and the

Commonwealth of Massachusetts and caused the violations of the constitutional rights of the

22

plaintiff as alleged in this Complaint.

124.    The plaintiff is thereby entitled to damages under the United States Constitution,

42 U.S.C. Sections 1983 and 1988, M.G.L. Chapter 12, Section 11I, M.G.L. Chapter 258,

Section 4, and other state laws including the Massachusetts Constitution.

### *COUNT X: NEGLIGENCE/ MASSACHUSETTS TORT CLAIM*

125.    The plaintiffs hereby incorporate by reference the allegations of Paragraphs 1

through 124 of this Complaint as though fully set forth herein.

126.    The defendant Town of Spencer is liable to the plaintiffs for damages pursuant

to M.G.L. Chapter 258, Section 4.

23

**WHEREFORE,** plaintiffs Charles E. Samples and Carole Samples pray that this Court enter judgment on their behalf and :

1. Award appropriate compensatory damages to plaintiff Charles E. Samples from the defendants jointly and severally in an amount to be determined by the court;

2. Award appropriate compensatory damages to plaintiff Carole Samples from the defendants jointly and severally in an amount to be determined by the court;

3. Award punitive damages to plaintiff Charles E. Samples from defendants Ayotte, LaPierre and Puchalski, in an amount to be determined by the court;

4. Award punitive damages to plaintiff Carole Samples from defendants Ayotte, LaPierre and Puchalski, in an amount to be determined by the court;

5. Award the plaintiffs costs and attorneys' fees;

6. Award such other relief as this Court deems just, equitable and appropriate.

24

## THE PLAINTIFFS HEREBY DEMAND A JURY TRIAL

DATED:      June 1, 1998

Respectfully submitted,
The Plaintiffs
By Their Attorneys,

Joan A. Antonino
BBO#547319

Charles J. DiMare
BBO#124820
ANTONINO & DIMARE
Post Office Box 3333
Amherst, MA 01004-3333
(413) 549-5330

25

JS 44
(Rev. 07/86)

**CIVIL COVER SHEET** 98   40098

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

CHARLES E. SAMPLES and
CAROLE SAMPLES

## DEFENDANTS

JAMES A. AYOTTE,
RICHARD A. LAPIERRE,
VINCENT PUCHALSKI,
LOUIS A. MARTIN, and
THE TOWN OF SPENCER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Spencer
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Spencer
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Joan A. Antonino and Charles J. DiMare
ANTONINO & DIMARE
P.O. Box 3333, Amherst, MA  01004
(413) 549-5330
BBO #  547319; 124820

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
42 U.S.C. Section 1983, Illegal Arrest and Unlawful
Imprisonment, Excessive Force, Harassment and Intimidation, Assault and Battery,
Malicious Prosecution, Conspiracy to Violate Civil Rights, Abuse of Process,
M.G.L. Ch. 258, S. 4, Loss of Consortium and Emotional Distress.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE /PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 630 Liquor Laws | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury— Product Liability | ☐ 640 R.R. & Truck | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC (405(g)) ☐ 863 DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | | | ☐ 871 IRS— Third Party 26 USC 7809 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 Habeas Corpus | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____ DOCKET NUMBER _____

DATE
6/1/98

SIGNATURE OF ATTORNEY OF RECORD
Joan A. Antonino

**UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.    TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____

      Charles E. Samples v. James A. Ayotte

2.    CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE
      LISTED ON THE CIVIL COVER SHEET.   (SEE LOCAL RULE 8(a)).

      ___   I.     160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

      _X_   II.    195, 368, 400, 440, 441-444, 540, 550,
                   625, 710, 720, 730, 740, 790,791, 820, 830,
                   840, 850, 890, 892-894, 895, 950.

      ___   III.   110, 120, 130, 140, 151, 190, 210, 230,
                   240, 245, 290, 310, 315, 320, 330, 340,
                   345, 350, 355, 360, 362, 365, 370, 371,
                   380, 385, 450, 891.

      ___   IV.    220, 422, 423, 430, 460, 510, 530, 610,
                   620, 630, 640, 650, 660, 690, 810, 861-865,
                   870, 871, 875, 900.

      ___   V.     150, 152, 153.

3.    TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 8(e)).

      N/A

4.    HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN
      FILED IN THIS COURT?__No

5.    DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS
      AFFECTING THE PUBLIC INTEREST?   No
      IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?  (SEE 28 USC 2403)
      _____

6.    IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES
      PURSUANT TO TITLE 28 USC 2284?   No

7.    DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF
      MASSACHUSETTS (WORCESTER COUNTY) - SEE LOCAL RULE 8(c).   YES   X
      OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - SEE
      LOCAL RULE 8(d).   YES_____

8.    DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN
      SECTIONS OF THE DISTRICT?   YES   X
      (a)    IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?   Central

9.    IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?  Central

10.   IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY
      GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE
      IN THE CENTRAL SECTION_____  OR WESTERN SECTION_____

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME_____ Joan A. Antonino and Charles J. DiMare

ADDRESS__P.O. Box 3333, Amherst, MA  01004

TELEPHONE NO.  (413) 549-5330

(COVER.SHT-09/89)